IN the Matter of Salvatore T. PARULLO, a/k/a Salvator Parulo and Jeanne Parullo, Debtors.

INTERNATIONAL DIAMOND CORP., Plaintiff,

v.

Salvatore T. PARULLO, a/k/a Salvator Parulo and Jeanne Parullo, Defendants.

Bankruptcy Nos. 80 A 2081, 80 B 12119.

United States Bankruptcy Court, N. D. Illinois, E. D.

Sept. 10, 1981.

Harold Shabelman, Joliet, Ill., for plaintiff.

Thomas McDonald, Joliet, Ill., for debtor.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause came on to be heard upon the complaint of International Diamond Corporation, Inc. that its claim for $3,000 be held non-dischargeable under subsections 523(a)(2)(A) and § 523(a)(4) of the Bankruptcy Code [11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4)]. At the outset it may be stated that there was no evidence that the debtor, Parullo, was a fiduciary or employee of International Diamond, nor that he had committed larceny. The dischargeability allegations under § 523(a)(4) are not sup-ported by any evidence, and that subsection will be disregarded hereafter, reducing the legal issue to whether the debtor:

"[obtained] . . . property . . . by (A) false pretenses, a false representation, or actual fraud. . ." (11 U.S.C. § 523(a)(2)(A)).

It is admitted by the pleadings that the debtor purchased from International Diamond two diamonds weighing approximately 1/3 carat each, for an aggregate price of $3,000, for which a check in the amount of $3,000 was issued by the debtor to International Diamond, but payment on the check was stopped before delivery of the diamonds to Parullo. It is contended by the plaintiff, and denied by the defendant, that the stopping of the check prior to the delivery of the diamonds constituted the obtaining of merchandise under false pretenses and by false representation.

Except for testimony of Kurt Ernister, Regional Manager of International Diamond Corporation, and Jesse Waldron, an independent agent who sold for International Diamond Corporation, there is no indication of the nature and reputation of the company and whether or not its operations were of the type which had brought the selling of diamonds through the mail to unsophisticated purchasers under so much fire from the Federal Trade Commission, Better Business Bureaus, and similar consumer protection organizations.

It was difficult to evaluate the testimony of Salvatore Parullo, the debtor, because of his eccentric behavior. He testified that he had been in the hospital for a month in June and July, 1980, as the result of a heart attack and that he had been hospitalized several times since. The off-hand manner in which his answers were given on direct examination suggested that he might be affected by some form of medication.

The testimony of Parullo was that he had borrowed $40,000 from his father. He purchased the diamonds as an investment and wrote out a check for $3,000 to cover the cost, payable to International Diamond Cor-

poration. The check from his father had not cleared when the $3,000 check was presented for payment, and so the latter check was returned. When advised of this by Jesse Waldron, Parullo advised Waldron to redeposit the check because by the time that the $3,000 check was re-presented, the deposit of his father's check would constitute collected funds. Thereafter, and before the $3,000 check was re-presented, Parullo stopped payment on it, with the consequence that the $3,000 check never was paid. All of the foregoing took place during the month of May, 1980.

A notation on the face of the $3,000 check suggests that payment was stopped June 5, 1980. The Diamond Corporation's witness testified that the company did not receive notice of the stop until June 17, 1980, and that the diamonds in question had been mailed to Parullo on June 16, 1980.

There were certain disparities between the testimony of Parullo and the Diamond Corporation's witnesses, which are not of determinative importance but suggest that the Diamond Corporation's evidence is more credible. The Diamond Corporation witness testified that it follows strict standardized mailing procedures, including:

(a) diamonds are sent registered on which the postage is $2.00 to $3.00;

(b) in a box which is approximately 4½″ × 6″ (Plaintiff's Exhibit 5);

(c) made of white cardboard with white adhesive at the edges and corners;

(d) the box is not wrapped in any paper; and

(e) a passbook is mailed to customer about two weeks after the diamonds are mailed.

Parullo testified that he received the diamonds:

(a) in a brown cardboard box;

(b) about 3″ × 3″;

(c) wrapped in brown paper; and

(d) the passbook was enclosed with the diamonds.

From the foregoing, which has little probative value, the Court concluded that Parullo is not attentive to detail. Another example of this is that he was emphatic that the first three numbers of the zip code of the Diamond Corporation address in California to which he returned the diamonds were 603. The Court will take judicial notice of the fact that those prefix numbers would put the location of the addressee in or near Oak Park, Illinois.

Although Parullo's testimony was not completely coherent and consistently logical, the theme of it seemed to be that he had negotiated with Jesse Waldron for several months before the order was placed. Waldron had stated that the corporation had been in business for many years and that the diamonds could be used as collateral for bank loans. Between the time of the order and the delivery of the diamonds Parullo had occasion to inquire of the Heritage Bank in Crest Hill whether he could borrow against his interest in an automobile which he was purchasing on time, and at the same time he asked whether the diamonds could be used as collateral. He found out that the corporation had not been in business very long and that the diamonds would not be usable readily as collateral. His wife was angry with him about using the money for this purpose when it might have been used for his health. For these reasons he caused payment on his $3,000 check to be stopped.

There was no evidence introduced to suggest that Parullo expected that the diamonds would be delivered after payment had been stopped. The normal inference to be drawn from those circumstances is that delivery would be stopped as soon as a notice of the stopping of payment had been received. There is no evidence that Parullo was aware of the corporation's routines so that he could determine that knowledge of the stopping of payment would follow delivery.

The Court concludes that it has not been established that stopping of payment on the

$3,000 check was fraudulent. As a matter of normal probability, the likelihood of the results of stopping payment for goods which have not been delivered is that they will not be delivered.

It seems likely that a stronger case could have been made if the contention of plaintiff had been that the diamonds were not returned and that the keeping of the diamonds constituted a conversion. That, however, was not the nature of the pleading, and the Court is not permitted to surmise what the answer would have been nor what the proof would have been if the corporation had sought to establish nondischargeability under § 523(a)(6).

There is no evidence to support any contention that there was fraud at the outset, and the argument is weak that stopping of payment of the check prior to delivery was fraudulent where the defendant had no reason to expect that delivery would be made in spite of the fact that payment had been stopped. Parullo's testimony respecting return of the diamonds is not credible. The most likely combination of circumstances, consistent with the evidence, is that:

(1) Parullo bought the diamonds;

(2) Because of pressure from his wife he decided to cancel the contract, which he purported to do by stopping payment of the check;

(3) he was surprised to receive the diamonds after the check had been stopped;

(4) he was short of funds because of medical expenses; and

(5) he appropriated the diamonds and made up a story about returning them.

If Parullo is guilty of a non-dischargeable offense, it is of conversion at step (5), which was not pleaded.

The Court finds that the plaintiff has failed to prove its case by clear and convincing evidence and the debt to International Diamond Corporation, Inc. is held to be discharged.